**Stephen S. ADAMS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 90–162C.**

United States Court of Federal Claims.

Oct. 30, 1992.

It is the absence of authority for an award of costs upon a voluntary dismissal that is decisive.

ORDER

MOODY R. TIDWELL, III, Judge.

This case is before the court on the parties' cross-motions for partial summary judgment. For the reasons set forth below, the court grants the cross-motions in part and denies in part.

FACTS

This is a consolidated action by approximately 5400 individuals in seven federal agencies seeking overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (1992) (FLSA). Plaintiffs are criminal investigators in the GS–1811 series in the Bureau of Alcohol, Tobacco and Firearms (BATF), Drug Enforcement Agency (DEA), Internal Revenue Service (IRS), Secret Service, Customs Service, Immigration and Naturalization Service (INS), and Fish and Wildlife Service (FWS). Plaintiffs covered by this order are variously described as GS–1811–9 (GS–9) through GS–1811–13 (GS–13) criminal investigators in official position descriptions (PDs).[1] The court does not dispose of INS or FWS plaintiffs' claims, as they were not the subject of these cross-motions. The parties have agreed in the joint stipulation of facts that the official agency PDs describe the major duties of plaintiffs, and that plaintiffs spend at least 51% of their work time performing criminal investigation work. In the case of Secret Service plaintiffs, the parties stipulate that plaintiffs spend at least 51% of their time performing either criminal investigation work, protective duties, a combination of both, or related duties. For simplicity, the court will refer to all these duties as investigative duties.

Plaintiffs contend that their positions have been erroneously classified as administrative and therefore exempt from the overtime provisions of FLSA, and seek damages flowing from this alleged misclassification. Although plaintiffs do not specifically request reclassification as non-exempt employees, the court will include this

Jules Bernstein, Washington, D.C., with whom was Edgar James, and Linda Lipsett, for plaintiffs.

Shalom Brilliant, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, and David M. Cohen, for defendant.

---

1. Plaintiffs' Agency Position numbers are as follows: at BATF, SPD–127, SPD–015, SPD–016 and SPD–220; at DEA, M20X0488, M20X0498, M20X0508, and M20X0518; at IRS, SPD– 90333E, SPD–90334E, SPD–90335E, and SPD–90336E; at Secret Service, 85063, 85062, 84145, 84146, 84021, and 83152; and at Customs Service, 6038, 6039, 6040, and T046034.

relief as part of damages, should it find for plaintiffs on the issue of liability. Defendant, through its respective agencies, asserts that plaintiffs are properly classified as administrative employees and are therefore exempt from FLSA's overtime provisions.

## JURISDICTION

Defendant has challenged the court's jurisdiction to hear this case. Defendant argues that plaintiffs bear the burden of proving that they are covered under FLSA and therefore fall within the court's Tucker Act jurisdiction. Defendant argues that the United States has only waived sovereign immunity to the extent that FLSA confers upon plaintiffs a substantive right to receive money. Defendant further claims that because FLSA only confers a substantive right to receive money on those persons covered, plaintiffs first must prove they are not exempt from FLSA in order for this court's jurisdiction to attach. In essence, defendant argues that plaintiffs must prove the substance of their case before they may be heard by this court.

Defendant's argument fails for two reasons. First, as this court recently noted: "[t]he FLSA exemption status is not committed to agency determination; jurisdiction in cases brought to recover lost overtime wages under the FLSA is a *de novo* proceeding under the Tucker Act, 28 U.S.C. § 1491(a), and the FLSA, 29 U.S.C. § 216(b)." *Amshey v. United States*, 26 Cl.Ct. 582, 590 (1992). Thus a declaration by an agency that an employee is exempt from the overtime provisions of FLSA is not binding on this court and is afforded no weight. Second, "[t]he FLSA in effect establishes a presumption for a nonexempt status. The employer clearly has the burden of establishing a claimed exemption." *Id.* at 590; *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). This court must therefore assume that plaintiffs are covered by the overtime provisions of FLSA unless defendant proves otherwise. Thus, to establish this court's jurisdiction, it is sufficient to demonstrate that plaintiffs are employed by agencies to which FLSA is applicable, and that they have worked overtime hours which would be compensable if plaintiffs are not exempt from the FLSA overtime requirements. The court finds that plaintiffs have met this burden. This court also noted recently that "there is a distinction between the right to be heard to make a claim under a statute and the right to relief under the circumstances. A shortcoming in the latter proof 'does not constitute an objection to jurisdiction.'" *Adam v. United States*, 26 Cl.Ct. 782, 785 (1992) (citing *United States v. Clarke*, 33 U.S. (8 Pet.) 436, 446, 8 L.Ed. 1001 (1834)). Thus, the court's jurisdiction under 28 U.S.C. § 1491(a) is properly invoked.

## DISCUSSION

This case is before the court on defendant's motion for partial summary judgment and plaintiff's cross-motion for partial summary judgment. Summary judgment is properly granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987) (citing *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149 (Fed.Cir. 1986)). In considering a motion for summary judgment, the evidence must be viewed, and inferences drawn, in a light most favorable to the non-moving party. *Litton Indus. Prod., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir. 1985); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146 (Fed.Cir.1983).

The parties have stipulated to the position descriptions of each plaintiff affected by this order. Courts have in the past relied on such descriptions in reviewing FLSA exemption determinations. *Amshey*, slip op. at 28; *Campbell v. United States Air Force*, 755 F.Supp. 893, 894–95 (E.D.Cal.1990), *vacated on other grounds*, *Campbell v. United States Air Force*, 972 F.2d 1352 (Fed.Cir.1992).

The court now turns to the application of FLSA to plaintiffs' claims. Part I of the court's opinion describes the four part test set out in the regulations that is used to determine whether plaintiffs are exempt from FLSA overtime provisions. Part II of the opinion applies the test to the various position descriptions that are the subject of the cross-motions.

## I. Interpretation of the Fair Labor Standards Act

Interpretation of FLSA requires examination of the United States Code, the Code of Federal Regulations, and the Federal Personnel Management (FPM) System Letters promulgated by the Civil Service Commission (CSC), precursor to the Office of Personnel Management (OPM), interpreting the language of the relevant CFR sections.[2] An analogous set of regulations, promulgated by the Department of Labor (DOL), established to administer FLSA in the private and some of the public sector, further complicates the labyrinth of rules used to interpret FLSA.

The parties dispute the extent to which DOL's regulations control OPM's administration of FLSA over plaintiffs. While the court finds that OPM's regulations are controlling, and that it need not consider DOL's regulations and interpretations except as explanatory where OPM has remained silent, the court's findings would be the same under either party's version of the role of DOL's regulations.

### A. *Fair Labor Standards Act*

FLSA states that an employee who works more than forty hours per week must receive overtime pay at the rate of one and one-half times the employee's normal compensation. 29 U.S.C. § 207(a). Federal, state and local law enforcement employees' overtime compensation, however, is based on a longer work week. The length of this work week is determined by the Secretary of Labor ("Secretary"). *Id.*

§ 207(k). However, any such employee who is classified as executive, administrative, or professional is exempt from the overtime provisions of FLSA. *Id.* § 213(a)(1). FLSA grants authority to the Secretary of Labor to determine the scope of this exemption for all private, local and state employees, as well as for certain enumerated federal employees. *Id.* § 213(a)(1); *id.* § 204(f). OPM has the authority to determine the scope of the exemptions for those employees in the federal sector not specifically reserved to the Secretary's authority. *Id.* § 204(f).

Plaintiffs argue that explicit inclusion of public employees engaged in law enforcement activities under FLSA overtime provisions in § 207(k) mandates a finding that all criminal investigators, regardless of their duties and regardless of the provisions of § 213(a)(1), receive overtime compensation. Plaintiffs argue, in effect, that § 207(k) takes precedence over § 213(a)(1)—that because they are law enforcement personnel, they cannot simultaneously be administrative employees.[3] Relying on *Roney v. United States,* 790 F.Supp. 23 (D.D.C.1992), plaintiffs contend that if the court finds them exempt from FLSA overtime provisions, the exemption of § 213(a)(1) would effectively "swallow the rule" of § 207(k). *Roney,* 790 F.Supp. at 28.

The court agrees that finding criminal investigative work to be *per se* administrative work would negate § 207(k). Yet to find that § 207(k) law enforcement work can never be administrative work would be equally wrong. Were this court to find— and it does not—that performing criminal investigative work requires an employee to be sheltered from § 213(a)(1) under § 207(k), then the administrative, executive, and professional exemptions of § 213 would be meaningless for all positions labelled "criminal investigator," regardless of the work actually performed by the em-

---

2. In the interest of simplicity, the court will refer to all CSC and OPM regulations and interpretations as those of OPM.

3. The court will refer to the § 213(a)(1) exemption as an administrative exemption for the purposes of this order, as the parties have indicated and the court agrees that the executive and professional exemptions clearly do not apply.

ployee. In fact, OPM indicated that § 213(a)(1) is to be applied first, to screen out administrative employees from FLSA's overtime provisions. Attachment to FPM Letter No. 551–5, at 6 (Jan. 15, 1975). Only then is an agency to apply § 207(k) to nonexempt employees engaged in law enforcement activities in order to determine the amount of their overtime compensation. *Id.*

In giving full meaning to both § 207(k) and § 213(a)(1), it is necessary to examine the actual work performed by plaintiffs, not simply the general category of their positions. OPM indicated that an employee's classification title is not determinative of his or her exemption status. Attachment to FPM Letter No. 551–7 at 2 (July 1, 1975) ("Determinations as to the exempt or nonexempt status of a position ultimately rest on the actual duties of the position."); *see also* 29 C.F.R. § 541.201(b) (1992). In practical terms, the court must examine the attributes of the position descriptions before it to determine whether or not § 213(a)(1) screens plaintiffs out of FLSA overtime coverage.

### B. *Code of Federal Regulations*

The OPM has promulgated regulations for the implementation of FLSA at 5 C.F.R. § 551.101, *et seq.* (1992).[4] These regulations are entitled to great deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct.

792, 801, 13 L.Ed.2d 616 (1965). Under § 551.202, defendant bears the burden of proving that plaintiffs are exempt from FLSA overtime provisions, and thus that plaintiffs meet all of the criteria of § 551.-205, 5 C.F.R. § 551.202(b); Attachment to FPM Letter No. 551–7 at 11. Any exemption to FLSA's overtime provisions must be narrowly construed. 5 C.F.R. § 551.202(a); Attachment to FPM Letter No. 551–7 at 11.

Section 551.205 delineates a four part test used to determine whether an agency may classify an employee as exempt from FLSA overtime provisions pursuant to 29 U.S.C. § 213(a)(1). The employee must satisfy each element of the test in order to be classified as administrative, and thus exempt. Sections 551.205(a) and (b) each have multiple subparts.

The first element of the test, section 551.205(a), examines the type of work in which an employee engages to determine if the work may be characterized as administrative. To satisfy this element, the employee's "primary duty" must consist of work that either: (1) significantly affects the formulation or execution of management policies or programs; (2) involves general management or business functions or supporting services of substantial importance to the organization serviced; or (3) involves substantial participation in the executive or administrative function of a management official.[5] Plaintiffs need fall

---

**4.** OPM administers 29 U.S.C. § 213(a)(1)'s administrative exemption through 5 C.F.R. § 551.-205, entitled Administrative exemption criteria. Section 551.205 states:

> An administrative employee is an advisor, assistance [sic], or representative of management, or a specialist in a management or general business function or supporting service who meets all of the following criteria:
> (a) The employee's primary duty consists of work that—
> (1) Significantly affects the formulation or execution of management policies or programs; or
> (2) Involves general management or business functions or supporting services of substantial importance to the organization serviced; or
> (3) Involves substantial participation in the executive or administrative functions of a management official.
> (b) The employee performs office or other predominantly nonmanual work which is—

> (1) Intellectual and varied in nature; or
> (2) Of a specialized or technical nature that requires considerable special training, experience, and knowledge.
> (c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.
> (d) In addition to the primary duty criterion that applies to all employees, General Schedule employees classified at GS–5 or GS–6 (or the equivalent in other white collar systems) must spend 80 percent or more of the work time in a representative workweek on administrative functions and work that is an essential part of those functions.

5 C.F.R. § 551.205.

**5.** OPM explained the meaning of substantial participation in the executive or administrative function of a management official in FPM Letter No. 551–7 as "participat[ion (as secretaries, administrative or executive assistants, aids [sic],

into only one of these three categories to pass this element of the test. 5 C.F.R. § 551.205(a).

Section 551.205(b), the second element of the test, focuses on the nature of the work that the employee performs. To satisfy this element, the employee must perform "office or other predominantly nonmanual" work that is either: (1) intellectual and varied; or (2) of a specialized or technical nature that requires considerable special training, experience and knowledge. *Id.* § 551.205(b). Fulfilling either of these two criteria will satisfy this element.

The third element of the test, § 551.-205(c), also focuses on the nature of the employee's work, but examines the amount and type of discretion an employee exercises in his or her daily work. To fulfill this element of the test, the employee's work must require the frequent exercise of "discretion and independent judgment." *Id.* § 551.205(c). Furthermore, the employee can only be "under general supervision in performing the normal day-to-day work." *Id.*

The fourth and final element pertains only to employees at the GS–5 or GS–6 level. The court need not examine this element of the test because all plaintiffs are GS–9 and above.

### C. *Federal Personnel Management System Letter*

OPM expressed its interpretations of the four part § 551.205 test in FPM Letters No. 551–7 and 551–13. OPM's regulations and interpretations must be consistent with FLSA itself, and with the standards set by the Secretary of Labor for the private sector. *American Fed'n of Gov't Employees v. Office of Personnel Management,* 821 F.2d 761, 770 (D.C.Cir.1987); *Lanehart v. Horner,* 818 F.2d 1574, 1578 (Fed.Cir.1987); *Zumerling v. Devine,* 769 F.2d 745, 749–50 (Fed.Cir.1985). However, OPM's interpretations need not be identical to those of the Department of Labor. *Riggs v. United States,* 21 Cl.Ct. 664, 681 (1990) (citing *American Fed'n of Gov't Employees,* 821 F.2d at 771 n. 11). In light of this case law, the court will consider DOL's interpretations of 29 U.S.C. § 213(a)(1) where helpful, but will not rely on them as controlling.

### 1. *Section 551.205(a): Primary Duty*

■ For an employee's work to satisfy either of the two [6] applicable parts of § 551.205(a), the work in question must be the employee's primary duty. 5 C.F.R. § 551.205(a). An employee's primary duty is defined in the attachments to FPM Letters No. 551–7 and 551–13 as

> that which constitutes the major part (over 50%) of the employee's work. However, a duty which constitutes less than 50% of the work can be credited as the primary duty for exemption purposes *provided* that duty: (1) constitutes a substantial, regular part of a position, and (2) governs the classification and qualification requirements of the position, and (3) is clearly exempt work in terms of the basic nature of the work, the frequency with which the employee must exercise discretion and independent judgment, and the significance of the decisions made.

Attachment to FPM Letter No. 551–7 at 5–6 (*as modified by* FPM Letter No. 551–13 at 1, and Attachment at 1) (emphasis in original). In other words, an employee's primary duty may be the one he or she engages in during a majority of his or her work time; or, it may be the duty which is most important or significant, even though it occupies less that half of the employee's work time. Thus, an employee who only occasionally oversees the investigative work of other employees and seeks their compliance with the managerial policies of the agency might still pass the primary duty element if the employee's occasional supervision of others meets all three requirements set forth above. The court will

---

etc.) ] in portions of the managerial or administrative functions of a supervisor ..." Attachment to FPM Letter No. 551–7 at 9. Defendant did not argue that plaintiffs meet this description, therefore the court shall not apply this subpart in determining plaintiffs' exemption status.

6. *See* footnote 5, *supra.*

refer to these requirements as the "alternative primary duty test."

In FPM Letter No. 551-7, OPM made a special distinction for the primary duty requirement of GS-9 plaintiffs. In addition to the primary duty requirement, GS-9 plaintiffs must spend "80% or more of the work time in a representative workweek on administrative functions and work that is an essential part of those functions." *Id.* at 4. Thus, there is a higher primary duty threshold for finding GS-9 plaintiffs non-exempt.

### 2. Section 551.205(a)(1): Formulation or Execution of Management Policy

In FPM Letter No. 551-7, OPM stated that management policies and programs can range from broad national goals to the specific local objectives of field offices. *Id.* at 8. The letter characterizes employees who influence the formulation or execution of these management policies as "typically perform[ing] one or more phases of program management (i.e., planning, developing, promoting, coordinating, controlling, or evaluating *operating* programs of the employing organization or of other organizations subject to regulation or other controls)." *Id.* (emphasis added). Employees who influence the formulation or execution of management policies are those who obtain others' compliance with these policies. *Id.* Because of OPM's vague language, it is helpful to examine DOL's interpretation of the regulation analogous to 5 C.F.R. § 551.205(a)(1), found at 29 C.F.R. § 541.2(a)(1).

In a letter from then Secretary of Labor Elizabeth Dole to the Governors of twelve states, Dole stated that:

[a]ctivities contemplated by the Regulations [29 C.F.R. part 541] as being "directly related to management policies or general business operations" of an employer are those related to the administrative operations of a business, as distinguished from the basic tasks of the employer's business, *i.e.*, the "production" work, or—in the case of a public

employer—the mission and function of the agency.

. . . .

[Administrative employees are] employees who plan or direct the implementation of such policy. They include persons who carry out major assignments in the operation of the business or agency, or whose work affects operations to a substantial degree. In general, then, "administrative employee" refers to a person who is engaged in *staff* functions as opposed to the *line* functions of an employer.

Enclosure to Letter from Secretary of Labor Elizabeth Dole to the Governors at 2–3 (Jul. 27, 1989) [hereinafter Secretary's Letter] (emphasis in original). In this letter, Secretary Dole stated that management policies are related to administrative duties, and that administrative work is not equal to performing the basic task of an agency. Pursuant to the weight of authority cited above dictating that OPM's administration of FLSA accord with that of DOL, the court reads this interpretation into that of OPM in FPM Letter No. 551-7. The result is the court's finding that the formulation and execution of management policy is distinct from the generation of the agency's product or basic task. Furthermore, the Claims Court has recently recognized the distinction between staff functions and production work.[7] In *Amshey*, the court acknowledged the difference between the production of a law enforcement agency and the agency's internal management functions. *Amshey*, 26 Cl.Ct. at 603; *see Adam*, 26 Cl.Ct. at 789.

### 3. Section 551.205(a)(2): Supporting Service

■ An employee meets the second subpart of § 551.205(a) if the employee's primary duty is providing the agency with a necessary supporting service, in contrast to a production function. OPM interpreted this criterion to mean that "each employee's work must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a

---

7. Other courts have also recognized this distinction. *Roney*, 790 F.Supp. at 27.

noticeable impact on the effectiveness of the organization advised, represented, or serviced." Attachment to FPM Letter No. 551–7 at 9. Thus, to exempt plaintiffs as providers of supporting services within the meaning of § 551.205(a), defendant must demonstrate not only that the positions are plaintiffs' primary duty, but also that the duty provides a service of substantial importance to the agency, and that plaintiffs' positions fall into one of the supporting service categories enumerated below.

In FPM Letter No. 551–7, OPM distinguished the general management, business, or supporting services mentioned in § 551.205(a)(2) from production functions or basic tasks. *Id.* It further characterized employees in this category as providing support to line managers through: (1) expert advice in a specialized subject matter, such as that provided by management consultants or systems analysts; or (2) assuming aspects of overall management function in such areas as safety, personnel, or finance; or (3) representing management in business functions such as negotiating or administering contracts; or (4) providing supporting services, such as automated data processing. *Id.* These examples further demonstrate that the supporting service category excludes those employees who provide "production functions" to their agencies.

*Campbell v. United States Air Force* is illustrative of the difference between supporting service work and production work. In *Campbell,* the court determined that Air Traffic Control Specialists (GS–2152–12), who were also mission control specialists for test flights, were properly classified as support personnel to Edwards Air Force Base. The court reasoned that they were specialists in their field and, without their services, test flights, one of the primary functions of Edwards Air Force Base, would not be successful. *Campbell,* 755 F.Supp. at 896–97. The *Campbell* court clearly envisioned support service employees as those employees whose position provided a service ancillary to the primary function of the agency or organization.

[A]s air traffic control and mission control specialists, plaintiffs provide test mission aircraft and other aircraft with information necessary for proper operation and safety. One of plaintiffs' many responsibilities in their capacity as both air traffic and mission controllers is to ensure that aircraft remain within a specified range and on a particular pattern. This service, necessary to avoid aircraft collisions, in addition to the mission control functions plaintiffs perform, demonstrates that plaintiffs provide "supporting services of substantial importance," without which Edwards Air Force Base would operate less safely, effectively, and efficiently.

*Id.* at 896. Thus, the *Campbell* court interpreted the phrase "supporting service personnel" as meaning those employees who provide a service which permits the agency to pursue its basic task, while not directly engaging in that task, and who were thus exempt from FLSA overtime provisions.

While arguing for exempt status in the instant case, defendant contends that plaintiffs provided a support function to federal prosecutors within the meaning of § 551.205(a)(2) by testifying and providing evidence for use at trial. Defendant further contends that preparation of case reports and arranging for the testimony of expert witnesses also constitute supporting services. Defendant's broad construction, however, is not consistent with the language of FPM Letter No. 551–7, which states that general management, business or supporting services are "distinguished from production functions." Attachment to FPM Letter at 9; *see also Amshey,* 26 Cl.Ct. at 603. In specific, defendant attempts to characterize plaintiffs' work as providing "expert advice in specialized subject matter fields"—one of the specific examples of a supporting service listed in FPM Letter No. 551–7.

■ However, the examples OPM listed under the category of "providing expert advice" in FPM Letter No. 551–7 do not encompass the duties performed by plaintiffs. The examples cited in this category are management consultants or systems analysts. While this list is clearly not ex-

**16**

haustive, it provides guidelines for judging the duties of plaintiffs. Management consultants and systems analysts typically provide advice on how to run an organization or other operational parameters pertinent to the organization. Defendant's argument encounters two obstacles. First, testifying at trial and preparing case reports is not equivalent to advising management on the operations of an organization or providing expert advice. The examples of "expert advice" listed include positions that require expert analytical skills in a specialized and technical area. Preparing case reports and testifying at trial do not entail expert analytical skills within the meaning of OPM's interpretations of 29 U.S.C. § 213(a)(1). Second, the OPM criteria clearly envision that support personnel will provide support to the organization that employs them, not to a separate organization with complementary functions. While it is possible to argue that plaintiffs and the Department of Justice attorneys they support are both employed by the same organization, i.e. the United States Government, the court declines to accept such a sweeping view of government employment as appropriate to the analysis of this case.

### 4. Section 551.205(b): Predominantly Nonmanual Work

■ The second element of the test under § 551.205 examines the nature of the work performed by the employee. This element requires that the employee perform office or other predominantly nonmanual work that is either (1) intellectual and varied in nature, or (2) of a specialized or technical nature that requires considerable training, experience or knowledge.

It is unclear whether or not plaintiffs perform "office work" as contemplated by § 551.205(b), yet they do perform some of their work within the office.[8] Therefore, the court must determine if plaintiffs perform "other predominantly nonmanual work." 5 C.F.R. § 551.205(b). OPM has not defined the term "nonmanual work" as used in § 551.205(b); consequently, the court will look to DOL's interpretation, as set out in 29 C.F.R. § 541.203.[9]

DOL has cryptically interpreted the term nonmanual work in its regulations to mean "white-collar" work. 29 C.F.R. § 541.203. The DOL regulations do not equate nonmanual work with office work.[10] Additionally, DOL states that "employees who spend most of their time in using tools, instruments, machinery, or other equipment, or in performing repetitive operations with their hands, no matter how much skill is required, would not be bona fide administrative employees within the meaning of § 541.2 [DOL's analogous regulation to OPM's § 551.205]," id. § 541.203(b), because such work is of a manual nature.[11]

A standard construction of the term "nonmanual" would lead the court to find that any work which is not like the behavior described above as manual work, is nonmanual work. Such a broad interpretation may, however, be unwarranted given the DOL interpretation that "the intent [of the nonmanual definition] is to include within the term 'administrative' only employees who are basically white-collar[.]" Id. § 541.203(a).

### 5. Section 551.205(b): Work of an Intellectual or Specialized Nature

In addition to the requirement that the work be "office" or "other predominantly

---

8. For instance, the IRS criminal investigator PDs state that the investigator "usually works outside the office. Investigations take [the investigators] into the environments in which subjects [of the investigation] live and work[.]"

9. The courts have not consistently defined the term "nonmanual work." *See Campbell,* 755 F.Supp. at 896; *White v. All America Cable & Radio,* 656 F.Supp. 1168, 1170 (D.P.R.1987).

10. Indeed, DOL states that "[i]f the work performed is 'office' work it is immaterial whether

it is manual or nonmanual in nature" as long as it is "white-collar" work, "since the accepted usage of the term 'white-collar' includes all office workers." 29 C.F.R. § 541.203(a).

11. DOL further states that performing some manual work does not preclude a finding that an employee is administrative, provided the limited manual work performed is related to the employee's exercise of discretion and independent judgment. *Id.* § 541.203(b).

nonmanual" work, OPM requires that this work be either (1) intellectual and varied, or (2) of a specialized or technical nature. 5 C.F.R. § 551.205(b). In FPM Letter No. 551-7, OPM characterized intellectual work as that which requires:

> general intellectual abilities, such as perceptiveness, analytical reasoning, perspective and judgment applied to a variety of subject matter fields, or work involving mental processes which involve substantial judgment based on considering, selecting, adapting, and applying principles to numerous variables. The employee cannot rely on standardized application of established procedures or precedents ... in selecting and recommending the 'best' alternative among a broad range of possible actions.

Attachment to FPM Letter No. 551-7 at 10.

OPM further described work of a specialized or technical nature as "[w]ork which requires substantial specialized knowledge of a complex subject matter and of the principles, techniques, practices, and procedures associated with that subject matter field. These knowledges [sic] characteristically are acquired through considerable on-the-job training[.]" *Id.* If the "office" or "predominantly nonmanual work" falls into either of these categories, it meets the requirements of the second element of the test for the administrative exemption from FLSA overtime provisions.

### 6. *Section 551.205(c): Independent Judgment and Discretion.*

Section 551.205(c) requires that the employee under consideration exercise discretion. OPM explained this subsection in FPM Letter No. 551-7 as requiring that the employee engage in "(1) comparing and evaluating possible courses of conduct, and (2) interpreting results or implications, and independently taking action or making a decision after considering the various possibilities." *Id.* The fact that an employee's decisions are subject to review is not fatal to a determination that the employee exercises discretion. *Id.* at 11. OPM delineated three factors used to determine whether an employee, whose decisions are reviewed,

will satisfy the test for independent judgment under § 551.205(c): (1) the work must involve sufficient variables as to require applying discretion; (2) the employee must have had authority to make the decision during the course of the assignment, with review of his or her decision following later; and (3) the decision must be independently significant. *Id.* OPM excepted from this final factor "decisions that affect only the procedural details of the employee's own work," or decisions that simply determine if a situation "does or does not conform to clearly applicable [agency] criteria." *Id.*

## II. Application of 5 C.F.R. § 551.205

The court now turns to its analysis of plaintiffs' various employment categories in light of OPM's FLSA exemption regulations and interpretations. The court will apply the analysis detailed above to the facts stipulated by the parties. If any of the stipulated PDs do not meet each of the three relevant elements of the four part test delineated in 5 C.F.R. § 551.205, then the applicable agency may not exempt plaintiffs from the overtime provisions of 29 U.S.C. § 207(k).

### A. *Bureau of Alcohol, Tobacco and Firearms* [12]

■ The mission of BATF is to reduce the criminal use of firearms "by effective enforcement of Federal firearms laws"; to obtain compliance with the alcohol and tobacco tax statutes; to eliminate prohibited trade practices in the alcohol industry by "effective enforcement and administration of the Federal Alcohol Administration Act"; and to prevent trafficking in contraband cigarettes. All BATF plaintiffs perform duties which effect these objectives.

### 1. *Section 551.205(a): Primary Duty*

The BATF GS-9 level criminal investigator PD states that the investigator's principal duties and responsibilities are to "perform[ ] a full range of investigations involving violations enforced by [BATF]" un-

---

**12.** Agency Position numbers SPD-127, SPD-015, SPD-016 and SPD-220.

der "close technical supervision." The investigator performs the investigations either as a member of a team or independently, depending upon the complexity of the investigation. BATF GS–9 level investigators perform no administrative or managerial duties, thus, they fail to fulfill either § 551.205(a)(1) or (2).

The BATF GS–11 level criminal investigator's principal duties and responsibilities are similarly to perform investigations. GS–11 level investigators perform additional duties in the course of their investigations which GS–9 level investigators do not handle. Among a GS–11 level investigator's "other duties" are managerial or administrative duties; however, as these are duties "other" than the investigator's "primary duties," they do not comprise the majority of the investigator's work time, nor do they satisfy the FPM Letter No. 551–7 alternative primary duty test. There is no indication that these limited "other duties" are a "substantial, regular part of [the] position," nor that the investigator exercises discretion and independent judgment in the course of performing these duties, nor that his or her decisions are "significant." [13] *Id.* at 5–6 (*as modified*). In specific, investigators engage in these "other duties" only "[a]s assigned": they "may serve" in an advisory capacity, "and, occasionally" in a supervisory capacity. Therefore, although GS–11 investigators do in fact perform a limited number of managerial or administrative duties, their primary duty is pure investigative work. Because GS–11 investigators perform production work as do GS–9 investigators, they fail to satisfy either § 551.205(a)(1) or (2).

The BATF GS–12 level criminal investigator PD lists the GS–12 level investigator's principal duties and responsibilities as comprising all GS–11 level duties, plus managerial duties such as planning investigations, raids, searches, seizures or arrests, and directing and coordinating the activities of other law enforcement officials in the course of planning or conducting an investigation. Because a GS–12 level investigator's primary duties are not only to perform investigations, but also to plan and direct investigations, a GS–12 investigator's primary work "significantly affects the ... execution of management policies and programs," 5 C.F.R. § 551.205(a)(1), e.g. investigation of BATF violations. GS–12 investigators obtain others' compliance with the operating programs of BATF by planning and directing investigations. Attachment to FPM Letter No. 551–7 at 8. Directing and coordinating the activities of other law enforcement officials in the pursuit of an investigation is a staffing function, rather than a production function, as contemplated by former Secretary of Labor Dole in her letter to twelve governors. The fact that the managerial primary duties may occupy less than 51% of the investigator's time is irrelevant in light of OPM's alternative primary duty test. *See id.* at 5–6 (*as modified*). That is, these managerial duties "constitute a substantial, regular part of [this] position, ... govern[ ] the classification ... requirements of the position, and ... [are] clearly exempt work in terms of" their basic nature, the discretion used, and the "significance of the decisions made." *Id.* GS–12 level investigators thus satisfy § 551.205(a)(1).

The BATF GS–13 level criminal investigator PD describes the GS–13 level investigator's principal duties and responsibilities as "includ[ing], but not limited to" performing complex investigations, coordinating information from other investigators and "recognizing patterns of illegal operation in order to anticipate and/or influence events as they transpire" in these investigations, and leading and coordinating units of BATF agents and law enforcement personnel from other agencies in performing investigations. Furthermore, a GS–13 level investigator's investigations "generally involve extensive and elaborate planning and coordination to resolve ... complex jurisdictional problems involving other [public sector] agencies." Additionally, the PD states that GS–13 investigators take an

---

**13.** The court assumes that these "other duties" at least relate to, if not govern, the classification requirements of the position as discussed in FPM Letter No. 551–7's alternative primary duty test, or else the PD would not have explicitly mentioned them.

active role in developing all facets of their investigative assignments, as well as devising novel "investigative approaches, techniques, and policies." GS–13 level investigators thus satisfy § 551.205(a)(1) via the alternative primary duty test for the same reasons as do GS–12 level investigators.

*2. Section 551.205(b): Predominantly nonmanual work which is intellectual and varied or of a specialized nature*

All four levels of BATF criminal investigators perform predominantly nonmanual work. While some of this work may be physically active work, i.e., participating in raids, searches, seizures or arrests, the PDs make no mention or inference of manual labor as defined by DOL in 29 C.F.R. § 541.203. Moreover, all BATF plaintiffs perform intellectual and varied work in the form of independent investigative work. The verb "to investigate" is defined as "[t]o follow up by patient inquiry or observation; to inquire and examine into with systematic attention to detail and relationship" *Webster's New International Dictionary* 1306 (2d ed. 1954). This definition makes it clear that the very nature of plaintiffs' occupation along with the independent judgment an investigator exercises in conducting his or her investigations, fits OPM's explanation of intellectual work. *See* Attachment to FPM Letter No. 551–7 at 10.

The court finds that only investigations of very limited complexity would limit plaintiffs to the "application of established procedures and precedents," *id.,* which OPM would not consider to be intellectual work. Thus, even GS–9 level investigators who perform investigations of only "moderate complexity" fulfill the criteria of § 551.205(b)(1). The court finds that all BATF plaintiffs at or above the GS–9 level satisfy this element.

*3. Section 551.205(c): Independent Judgment and Discretion*

The BATF GS–9 level criminal investigator PD indicates that the GS–9 investigator "[w]orks under the close technical supervision of a designated ATF [sic] supervisor," and that his or her reports are reviewed "for completeness, form, sufficiency of evi-dence, and validity of conclusions." Given the level of this supervision, GS–9 level investigators do not fulfill § 551.205(c)'s requirement that an exempt employee receive only "general" supervision. GS–9 level investigators receive supervision and review of their decisions in excess of that allowable for exempt administrative employees. *See id.* at 10–11.

The BATF GS–11 level criminal investigator PD indicates that GS–11 investigators, in contrast, work under only general supervision of a limited scope. The case reports of a GS–11 level investigator receive less searching scrutiny than do those of a GS–9 level investigator, and they are not reviewed for validity of conclusions. A GS–11 level investigator's work thus fulfills both § 551.205(c) and the language of FPM Letter No. 551–7. *See id.*

BATF GS–12 level criminal investigators also work under only general supervision; they use their "own judgment" in determining case referrals and when to initiate investigations; they perform[ ] independently or as a team leader" in large-scale investigations; and their case reports are reviewed only for "overall effectiveness of presentation." GS–12 level investigators thus fulfill both § 551.205(c) and the language of FPM Letter No. 551–7. *See id.*

BATF GS–13 level criminal investigators also work under only general supervision, and their decisions receive only cursory review. They easily satisfy both § 551.-205(c) and the language of FPM Letter No. 551–7 too. *See id.*

*4. Conclusions re: BATF investigator plaintiffs*

The court finds that BATF GS–9 and GS–11 level criminal investigator plaintiffs are non-exempt from the § 207(k) FLSA overtime provisions by way of § 213(a)(1) because they fail to meet the criteria of 5 C.F.R. § 551.205 for the reasons detailed above. The court further finds that BATF GS–12 and GS–13 level criminal investigator plaintiffs are properly exempt from § 207(k) by way of § 213(a)(1) because they satisfy all criteria of 5 C.F.R. § 551.205.

## B. *Drug Enforcement Agency* [14]

 According to its Mission Statement, the mission of DEA is to "enforce the controlled substances laws and regulations of the United States ... and to bring to the ... justice system ... those organizations [and individuals] involved in the growing, manufacturing, or distribution of controlled substances appearing in or destined for illicit traffic in the United States." Among its "major functions" are the investigation of violations of the controlled substances laws, and the management of a nationwide narcotics intelligence system. All DEA plaintiffs perform duties which are themselves, or are closely related to, these "major functions."

### 1. Section 551.205(a): Primary Duty

The DEA GS–9 criminal investigator PD states that the "purpose of [the GS–9 level investigator] position is to perform routine, non-complex investigations while learning to carry out higher level duties." These investigators conduct routine investigations "for which precedents have been established and for which prior training has been received," as well as portions of more complex investigations. Clearly, then, a GS–9 level investigator's primary duty is to perform production functions, and to "learn" to do other functions; the investigator does not meet the requirements of § 551.205(a)(1) or (2).

Among the "major duties" of a DEA GS–11 level criminal investigator are the planning and conducting of investigations, "determin[ing] the most effective manner for developing and carrying out [of] investigations," evaluating the scope and progress of investigations, "enlist[ing] the assistance of [other] law enforcement officers ... and coordinat[ing] investigational efforts with them," and participating in training and public relations functions as needed. Although these primary duties include managerial ones, namely the training and public relations functions, these are not duties which *"significantly* affect[ ] the ... execution of management policies," 5 C.F.R. § 551.205(a)(1) (emphasis added),

nor are they supporting services within the meaning of § 551.205(a)(2). Therefore, GS–11 level investigators do not satisfy § 551.205(a).

The DEA GS–12 criminal investigator PD lists the GS–12 investigator's duties as comprising those of a GS–11 investigator, plus the additional duty of supervising other investigators' efforts. This additional managerial duty is among the investigator's "major duties," and it "significantly affects the ... execution of management ... programs," *id.,* in that it ensures that investigations are completed correctly and in a timely manner. Although it may consume less than 51% of the investigator's work time, it is a "primary duty" according to the alternative primary duty test. *See* Attachment to FPM Letter No. 551–7 at 5–6 (*as modified*). DEA GS–12 level investigators thus fulfill § 551.205(a)(1).

The DEA GS–13 criminal investigator PD states that a GS–13 level investigator's duties include planning "the number and deployment of personnel" in investigations, "plan[ning] and pursu[ing] investigations primarily on the basis of broad agency policy and objectives, determining overall strategy," and acting as supervisory agent over other investigators to coordinate and oversee their investigations, thus satisfying § 551.205(a)(1). A DEA GS–13 level investigator also "provid[es] administrative support and operational guidance relating to financial aspects of ongoing DEA investigations," satisfying § 551.205(a)(2). *See id.* at 9 ("providing support to line managers through: (1) expert advice in specialized subject matter").

### 2. Section 551.205(b): Predominantly nonmanual work which is intellectual and varied or of a specialized nature

All four levels of DEA criminal investigators perform predominantly nonmanual work. While some of this work may be physically active work, i.e., participating in raids, searches, seizures or arrests, the PDs make no mention or inference of manual labor as defined by DOL in 29 C.F.R. § 541.203. Moreover, all DEA plaintiffs

---

**14.** Agency Position numbers M20X0488, M20X0498, M20X0508, and M20X0518.

perform intellectual and varied work in the form of investigative work.[15]

The court finds that only investigations of very limited complexity would limit plaintiffs to the "application of established procedures and precedents," *id.* at 10, which OPM would not consider to be intellectual work. Thus, even GS–9 level investigators who perform only "routine" investigations fulfill the criteria of § 551.-205(b)(1).[16] The court finds that all DEA plaintiffs at or above the GS–9 level satisfy this element.

### 3. Section 551.205(c): Independent Judgment and Discretion

The DEA GS–9 criminal investigator PD indicates that GS–9 level investigators work under technical supervision and receive "guidance commensurate with case complexity." Supervisors review a GS–9 level investigator's work "for technical accuracy and adequacy and for compliance with instructions, guides, rules and regulations." While a GS–9 level investigator works under only a minimum of supervision on daily assignments "for which prior experience has been gained," it is clear that such investigators receive supervision far in excess of the "general" supervision allowable for exempt employees. *See* 5 C.F.R. § 551.205(c). Moreover, the scope of review over the employee's work exceeds that permissible under the language of FPM Letter No. 551–7. *See* Attachment to FPM Letter No. 551–7 at 11.

In contrast, a DEA GS–11 level criminal investigator works under only "general administrative and technical supervision," and is expected "to use initiative and resourcefulness in developing ... leads without periodic [supervision]." Therefore, a GS–11 level investigator satisfies § 551.205(c).

DEA GS–12 level criminal investigators work under only general administrative supervision, plan cases independently and

performs daily work with a minimum of supervision. A GS–12 level investigator's work receives review only for "accomplishment of overall objectives and adherence to policy." Such an agent thus also fulfills § 551.205(c), and the language of FPM Letter No. 551–7. *See id.*

Similarly, a DEA GS–13 level criminal investigator receives only general supervision and instructions. His or her managerial decisions "are normally accepted without modification," and his or her work receives review only for "general effectiveness in supporting prosecutions and conformance with governing policies." DEA GS–13 level investigators thus also fulfill § 551.205(c) and OPM guidelines. *See id.*

### 4. Conclusions re: DEA investigator plaintiffs

The court finds that DEA GS–9 and GS–11 level criminal investigator plaintiffs are non-exempt from the § 207(k) FLSA overtime provisions by way of § 213(a)(1) because they fail to meet the criteria of 5 C.F.R. § 551.205 for the reasons detailed above. The court further finds that DEA GS–12 and GS–13 level criminal investigator plaintiffs are properly exempt from § 207(k) by way of § 213(a)(1) because they satisfy all criteria of 5 C.F.R. § 551.205.

### C. Internal Revenue Service[17]

▮▮▮▮ The IRS Criminal Investigative mission is "to foster voluntary compliance and ensure public confidence through the effective enforcement of criminal statutes relative to tax administration and financial crimes." All IRS plaintiffs perform duties which effect this mission.

### 1. Section 551.205(a): Primary Duty

The duties of an IRS GS–9 level criminal investigator are to plan and conduct investigations of violations which are "relatively

---

15. *See* discussion of definition of intellectual work and application of § 551.205(b) to ATF criminal investigators above.

16. The DEA GS–9 criminal investigator PD states that in the course of an investigation, agents must "exercise[ ] resourcefulness and appl[y] past experience in evaluating intelli-

gence information and in suggesting ways to follow up on leads and to develop drug and non-drug evidence." These activities are intellectual endeavors.

17. Agency Position numbers SPD–90333E, SPD–90334E, SPD–90335E, and SPD–90336E.

easy to detect and prove." Such investigators perform no managerial or administrative functions; therefore, they fail to meet either § 551.205(a)(1) or (2).

Like a GS–9 level investigator, an IRS GS–11 level criminal investigator plans and conducts investigations, though ones of more complex scope. A GS–11 level investigator also "participates, usually as a team member, in surveys and projects to identify areas of non-compliance." While this second duty may appear at first glance to be an administrative one, it is actually just another method of investigating violations of the Internal Revenue Code. However, even were it to be considered an administrative duty, and considered one which certainly relates to, if not governs, the classification requirements of the position as contemplated by the alternative primary duty test, § 551.205(a)(1) demands that the exempt work be that which *"significantly* affects the ... execution cf management policies or programs." 5 C.F.R. § 551.-205(a)(1) (emphasis added). Participation in such administrative activities alone does not constitute a *significant* effect upon the execution of IRS's policy of identifying areas of noncompliance. Moreover, mere participation in surveys does not "obtain[ others'] compliance with such policies," Attachment to FPM Letter No. 551–7 at 8, but serves as a means for targeting and ultimately obtaining enforcement of IRS goals. A GS–11 level investigator's primary duty, therefore, is to perform production functions; he or she fails to satisfy either § 551.205(a)(1) or (2).

An IRS GS–12 level criminal investigator plans and conducts investigations, and "develops ... recommendation[s] to district management to take action against an identified area of noncompliance [with the Internal Revenue Code]." This last duty is an administrative duty which "significantly affects the formulation ... of management policies and programs." 5 C.F.R. § 551.-205(a)(1). Thus, GS–12 level investigators fulfill § 551.205(a)(1) through the alternative primary duty test. *See* Attachment to

FPM Letter No. 551–7 at 5–6 (*as modified*).

The IRS GS–13 level criminal investigator PD lists among the investigator's duties "extensive planning and coordination with other [public sector] agencies," and "develop[ing] projects to the point where findings constitute a recommendation to district management ... to determine whether and how the district should devote investigative staffing[.]" These duties satisfy § 551.-205(a)(1) according to the alternative primary duty test. *See id.* Furthermore, a GS–13 level investigator "[m]ay function as a team leader and/or expert consultant in the intelligence gathering function." Thus, a GS–13 level investigator's "primary" duties include providing a supporting service. *See* 5 C.F.R. § 551.205(a)(2); Attachment to FPM Letter No. 551–7 at 9. GS–13 level investigators thus fulfill both § 551.-205(a)(1) and (2).

*2. Section 551.205(b): Predominantly nonmanual work which is intellectual and varied or of a specialized nature*

All four levels of IRS criminal investigators perform predominantly nonmanual work. Other than stating that the investigators must be in excellent physical condition "in order to perform criminal investigations, surveillance and undercover work," the IRS PDs do not indicate that investigators perform any manual labor as defined by DOL in 29 C.F.R. § 541.203. Moreover, all IRS plaintiffs perform intellectual and varied work in the form of investigative work.[18] All four IRS PDs list extensive "knowledge" requirements for the respective positions; thus, investigators satisfy § 551.205(b)(1). And, when investigators act as advisors or experts on a particular administrative subject manner, their work fulfills § 551.205(b)(2). Therefore, the court finds that all IRS plaintiffs at or above the GS–9 level satisfy the second element of § 551.205.

*3. Section 551.205(c): Independent Judgment and Discretion*

IRS GS–9 level investigators initially receive "close to moderate" supervision,

---

**18.** *See* discussion of definition of intellectual work and application of § 551.205(b) to BATF criminal investigators above.

which is decreased over time as the investigator gains experience. His or her investigative plan is "carefully reviewed," and his or her reports "are reviewed thoroughly for soundness of conclusions and conformance to investigative practices and procedure, [and] for accuracy in presenting data[.]" Therefore, the level of supervision exceeds that allowable over exempt employees, and GS–9 level investigators fail to meet § 551.205(c). Additionally, the scope of review received exceeds that permissible under FPM Letter No. 551–7. *See* Attachment to FPM Letter No. 551–7 at 11.

IRS GS–11 through GS 13 level investigators all perform their daily assignments under only general supervision; they all, therefore, satisfy § 551.205(c).

### 4. Conclusions re: IRS investigator plaintiffs

The court finds that IRS GS–9 and GS–11 level criminal investigator plaintiffs are non-exempt from the § 207(k) FLSA overtime provisions by way of § 213(a)(1) because they fail to meet the criteria of 5 C.F.R. § 551.205 for the reasons detailed above. The court further finds that IRS GS–12 and GS–13 level criminal investigator plaintiffs are properly exempt from § 207(k) by way of § 213(a)(1) because they satisfy all criteria of 5 C.F.R. § 551.205.

### D. United States Secret Service [19]

The mission of the Secret Service "includes the authority and responsibility:" to protect the President and Vice–President, among others; to provide security at the White House, other Presidential offices, the Vice–President's official Washington, DC, residence, and foreign diplomatic missions within the United States; "to detect and arrest" anyone violating the laws relating to currency and securities of the United States or foreign governments, and laws pertaining to other fraudulent use of electronic funds transfers, credit and debit cards, false identification documents, computer access, and United States Department of Agriculture food coupons; to stop forgery of obligations of the United States; and to conduct investigations of criminal violations of three enumerated laws. Office of the Federal Register, National Archives and Records Administration, *The United States Government Manual 1991/92* 501–02 (1991). All Secret Service plaintiffs perform duties which effect this mission.

 The court has before it GS–12 Secret Service plaintiffs in both the Office of Investigations and the Office of Protective Operations, and GS–13 Secret Service plaintiffs in the Office of Investigations and the Office of Protective Research. The Office of Investigations focuses its energies on currency violations and other criminal activities that concern the Secret Service as well as certain protective duties for important individuals. The Offices of Protective Operations and of Protective Research focus on protecting individuals and gathering information pertinent to this task.

### 1. Section 551.205(a): Primary Duty

The PD of Secret Service GS–9 criminal investigators—referred to as "special agents" therein—states that a GS–9 investigator's "major duties and responsibilities" are to conduct investigations "of routine scope and complexity." Likewise, GS–11 level criminal investigators also perform investigations, but ones of moderate complexity. Because neither GS–9 nor GS–11 level investigators perform any managerial duties, they fail to meet either § 551.-205(a)(1) or (2).

GS–12 level criminal investigators in the Office of Investigations and in the Office of Protective Operations not only perform investigations, but also lead and coordinate advance security surveys. Those agents in the Office of Protective Operations are also responsible for making recommendations for "operating revisions and improvements." Pursuant to the alternative primary duty test, the court finds that both sets of GS–12 investigators satisfy the requirements of § 551.205(a)(1). *See* Attachment to FPM Letter No. 551–7 at 5–6 (*as modified*).

---

**19.** Agency Position numbers 85063, 85062, 84145, 84146, 84021, and 83152.

GS–13 level criminal investigators in the Office of Investigations engage in many managerial duties involving coordination, development and leadership of investigation details, and development of investigative approaches and techniques. GS–13 level criminal investigators in the Office of Protective Research "plan[ ] and coordinat[e] the full range of intelligence operations and support for the protection of the President" and other designated protectees, "develop[ ] . . . comprehensive operational plans which outline the . . . manpower and coordination requirements" of complex and extensive protective operations, lead teams of agents in "evaluating and acting upon" intelligence information, "make[ ] recommendations for . . . improved operating procedures," "provide[ ] expert advice . . . to agents . . . concerning [identification] policies and procedures, and are responsible "for determining . . . the potential significance to the protective mission" of intelligence information and determining the appropriate course of action. Through the alternative primary duty test, GS–13 Office of Investigations investigators therefore clearly fit the requirements of § 551.205(a)(1), and those in the Office of Protective Research fit both § 551.-205(a)(1) and (2). *See id.*

*2. Section 551.205(b): Predominantly nonmanual work which is intellectual and varied or of a specialized nature*

■ The Secret Service PDs mention long work hours and adverse conditions, as well as the potential danger of the positions. The PDs also state that investigators must be in excellent physical condition, must be "proficient in the use of hand weapons," and are required to be "constantly alert." However, these attributes do not indicate that Secret Service investigative work is manual work; in fact, they fail to differentiate manual work from nonmanual work. Because there is no mention or inference of manual labor involved in these investigative positions, the court

finds that plaintiff investigators perform predominantly nonmanual work.

Moreover, all Secret Service PDs indicate that investigators' work requires the exercise of intellect. Even GS–9 level investigators who perform only "routine" investigations fulfill the criteria of § 551.-205(b)(1).[20] Therefore, the court finds that all Secret Service plaintiffs at or above the GS–9 level satisfy § 551.205(b).

*3. Section 551.205(c): Independent Judgment and Discretion*

GS–9 level criminal investigators work under the "overall administrative and technical supervision" of investigators at higher grade levels, "who outline an investigative approach, . . . priorities and deadlines." Their work is reviewed "for technical soundness and conformity to policy and requirements." Clearly, GS–9 level investigators receive supervision in excess of that allowable for an exempt employee according to § 551.205(c). Moreover, they fail to meet the language specifying the permissible scope of review of their work under FPM Letter No. 551–7. *See id.* at 11. They, therefore, fail to meet § 551.205(c).

GS–11 level investigators also work under the supervision of higher level investigators, and receive "instructions concerning assignments and objectives." Their performance "is measured in terms of overall adequacy, accuracy, completeness, and accomplishment of objectives." Although the Secret Service GS–11 level PD is not specific about what degree of supervision an investigator receives, a comparison against both the GS–9 and GS–12 PDs reveals that it must be somewhere between "overall" supervision and "general" supervision. It, therefore, cannot be only "general" supervision as required by § 551.-205(c). Moreover, the scope of review exercised over GS–11 investigator's work exceeds that permissible under FPM Letter No. 551–7. *See id.* GS–11 level investigators thus fail to satisfy § 551.205(c).

---

**20.** The Secret Service GS–9 criminal investigator PD states that in the course of an investigation, [s]ome judgment is exercised . . . in the identification and selection of appropriate guidelines and deciding among alternative approaches to given situations." These activities are intellectual endeavors.

GS–12 level investigators, both in the Office of Investigations and Office of Protective Operations, work under only the "general" supervision of higher level investigators. GS–13 level investigators in both the Office of Investigations and of Protective Research operate under "very general" supervision of their superiors. Review is limited to that of overall results, rather than of specific work done. Therefore, all four sets of investigators fulfill the requirements of both § 551.205(c) and FPM Letter No. 551–7. *See id.*

### 4. Conclusions re: Secret Service investigator plaintiffs

The court finds that Secret Service GS–9 and GS–11 level criminal investigator plaintiffs are non-exempt from the § 207(k) FLSA overtime provisions by way of § 213(a)(1) because they fail to meet the criteria of 5 C.F.R. § 551.205 for the reasons detailed above. The court further finds that Secret Service GS–12 level Office of Investigations and Office of Protective Operations criminal investigator plaintiffs, and GS–13 level Office of Investigations and Office of Protective Research criminal investigator plaintiffs are properly exempt from § 207(k) by way of § 213(a)(1) because they satisfy all criteria of 5 C.F.R. § 551.205.

### E. United States Customs Service— Marine Coordinators [21]

The Customs Service mission statement declares that the Customs Service is the "principal border enforcement agency" of the United States, and that it enforces the Tariff Act provisions as well as those of other laws and regulations. Among the Customs Service's mandates are to "[d]etect, interdict and/or investigate" violations of these laws and regulations. All Customs Service plaintiffs perform duties which effect this mission.

According to the Customs Service PDs before the court, Customs Service marine coordinators are a subset of Customs Service criminal investigators, sharing all characteristics and duties of the position, yet performing additional duties as well.

The court will therefore consider the exemption status of marine coordinators apart from that of non-marine coordinator criminal investigators.

### 1. Section 551.205(a): Primary Duty

■ A GS–9 level Customs Service marine coordinator's primary duties are to conduct criminal investigations, to "participate[ ] in the coordination of activities and movements of marine units in order to further effect overall individual case investigative efforts which affect management and coordination of vessels and equipment operation, maintenance, safety, training and reporting," and to "review[ ] strategic and tactical intelligence in relation to marine interdiction to provide information" to superior agents. Clearly, a GS–9 level marine coordinator's primary duties involve performing administrative work. However, because the GS–9 plaintiffs must spend at least 80% of their work time on the administrative or support task to fulfill the "primary duty" requirement of § 551.205(a), *id.* at 4, and because the parties have stipulated as to only 51% of plaintiffs' work time, the court cannot determine the exemption status of GS–9 level Customs Service marine coordinators under the facts before it. Accordingly, the court will not apply the remaining elements of § 551.205 to the GS–9 level marine coordinator PD.

■ Among the primary duties of GS–11 and GS–12 level marine coordinators are to conduct investigations, to

coordinate[ ] the activities and movements of marine units in order to further effect overall and individual case investigative efforts[, to] [e]nsure[ ] management and coordination of vessels and equipment operation, maintenance, safety, training and reporting[, to] [e]valuate strategic and tactical intelligence in relation to marine interdiction and [to] serve[ ] as the principal advisor to the Group Supervisor.

GS–11 and GS–12 level marine coordinators' primary duties thus include administrative ones. The duties specific to marine coordinators—as distinguished from other

**21.** Agency Position numbers 6038, 6039 and 6040.

Customs Service criminal investigators before the court—are "supporting services of substantial importance" to the Customs Service. 5 C.F.R. § 551.205(a)(2); *see also* Attachment to FPM Letter No. 551–7 at 9 (services are analogous to "[p]roviding supporting services, such as automated data processing, communications, or procurement and distribution of supplies"). They provide a function ancillary to the primary function of the Customs Service. In this sense, the GS–11 and GS–12 marine coordinators' situation is analogous to that of the Air Traffic Control Specialists (GS–2152–12) in *Campbell v. United States Air Force. Campbell, supra.*

Moreover, these plaintiffs spend at least 51% of their work time engaging in criminal investigative duties, and their marine coordinator duties are part of these investigative duties. Even if these supporting service duties do not occupy at least 51% of their work time, they may still be considered a primary duty under the three part alternative primary duty test.[22] *See* Attachment to FPM Letter No. 551–7 at 5–6 (*as modified*). First, by specifically delineating this activity under the category of "major duties," the Customs Service believes these services "constitute[] a substantial, regular part of [the] position." *Id.* Second, these duties govern the classification and qualification of this position. *Id.* The GS–11 and GS–12 plaintiffs do not merely participate in coordinating the movement of marine units, but actually coordinate this movement. Such a shift demonstrates the increased responsibility of the GS–11 and GS–12 positions, and thus governs their classification as distinct from that of a GS–9 level marine coordinator. Finally, because these are supporting services ancillary to the Customs Service's

primary function, they are "clearly exempt work in terms of [their] basic nature." *Id.* The court finds that GS–11 and GS–12 level marine coordinators satisfy § 551.205(a)(2).

*2. Section 551.205(b): Predominantly nonmanual work which is intellectual and varied or of a specialized nature*

Both GS–11 and GS–12 level Customs Service marine coordinators must be skilled in the use of firearms and self-defense methods. The Customs Service also requires them to be physically strong and to have the stamina required to do such activities as "running, stooping, bending, climbing, lifting and carrying heavy objects." Despite these physical requirements, the Customs Service marine coordinator PDs make no mention or inference of manual labor as defined by DOL in 29 C.F.R. § 541.203. Therefore, GS–11 and GS–12 level marine coordinators perform predominantly nonmanual work.

Moreover, all Customs Service plaintiffs perform intellectual and varied work in the form of investigative work.[23] The court finds that all Customs Service marine coordinator plaintiffs at the GS–11 and GS–12 level satisfy § 551.205(b)(1).

*3. Section 551.205(c): Independent Judgment and Discretion*

Although the PD for GS–11 level marine coordinator states that the coordinators exercise judgment in carrying out their duties, and states the scope of review of the coordinator's completed work, it is unclear as to what degree of supervision a coordinator receives in performing his or her daily assignments. The court is unable to determine on the facts before it whether or not GS–11 coordinators receive only "general" supervision as contemplated by

22. This analysis cannot be applied to GS–9 level marine coordinator plaintiffs because OPM excludes GS–9 level employees from the administrative exemption unless the employee spends at least 80% of his or her work time on administrative or support tasks. Attachment to FPM Letter No. 551–7 at 4. The court does not read the alternative primary duty test found in FPM Letter No. 551–7 as applicable to GS–9 level plaintiffs. That is, a GS–9 level employee may not pass the 80% administrative work threshold for the administrative exemption by having its

administrative duties qualify as "primary" duties according to this alternative test. *See id.* at 5–6 (*as modified*).

23. *See* discussion of definition of intellectual work and application of § 551.205(b) to BATF criminal investigators above. The Customs Service PDs state that in the course of an investigation, agents must apply their knowledge and exercise their analytical skills. These activities, among others, are intellectual endeavors.

§ 551.205(c), or supervision in excess of that. Therefore, the court cannot rule on such plaintiff's exemption status upon these motions.

Similarly, the GS–12 level marine coordinator PD does not delineate the extent of supervision exercised over these coordinators. The PD does explain that a coordinator's completed work receives only cursory review over unusual cases, and even then only to determine if changes in "operational procedures" or Customs Service "program emphases" are necessary, and states that coordinators use judgement in performing their duties. This suggests to the court that plaintiffs receive only "general" supervision in the exercise of their daily assignments. However, the court cannot determine whether GS–12 level coordinators do, in fact, satisfy § 551.205(c), and therefore cannot rule on their exemption status at this time.

### 4. Conclusions re: Customs Service marine coordinator plaintiffs

The court cannot rule on the exemption status of any of the three grade levels of Customs Service marine coordinator plaintiffs at this time, for the reasons set out above.

### F. United States Customs Service—Non–Marine Coordinator Criminal Investigators [24]

#### 1. Section 551.205(a): Primary Duty

■ The court now turns to the remaining Customs Service plaintiffs. GS–9 level criminal investigators perform routine criminal investigations within the scope of Customs Service jurisdiction. They do not formulate or execute management policy or programs, nor do they direct the activities of lower level agents. Thus these plaintiffs perform no administrative tasks, and consequently fail to satisfy either § 551.205(a)(1) or (2).

■ Customs Service GS–11 level criminal investigators' "major duties and responsibilities" are also to conduct investi-

---

**24.** Agency Position numbers 6038, 6039, 6040, and T046034. The court will hereinafter refer

gations. The applicable PD does not indicate that these plaintiffs perform any administrative duties; therefore, they fail to meet either § 551.205(a)(1) or (2).

Customs Service GS–12 level criminal investigators' "major duties" are similarly to conduct investigations. The PD gives no indication that these investigators perform any administrative duties. Therefore, like GS–11 level investigators, GS–12 level investigators also fail to meet either § 551.-205(a)(1) or (2).

■ In contrast, Customs Service GS–13 level criminal investigators perform many administrative duties, such as "direct[ing] the agents who are assigned to assist" in complex investigations, "conduct[ing] any specialized training required by those agents," "lead[ing] ... other agents in tracing leads," maintaining control over "a specific program such as stopping the smuggling of a particular commodity at a given port," and "mak[ing] recommendations for modifications of procedures, policies, and program objectives." GS–13 level criminal investigators clearly fulfill both § 551.205(a)(1) and (2) via the alternative primary duty test. See id.

#### 2. Section 551.205(b): Predominantly nonmanual work which is intellectual and varied or of a specialized nature

All four levels of Customs Service criminal investigators before the court must be skilled in the use of firearms and self-defense methods. The Customs Service also requires them to be physically strong and to have the stamina required to do such activities as "running, stooping, bending, climbing, lifting and carrying heavy objects." Despite these physical requirements, the Customs Service criminal investigator PDs make no mention or inference of manual labor as defined by DOL in 29 C.F.R. § 541.203. Therefore, all Customs Service criminal investigators perform predominantly nonmanual work.

Moreover, all Customs Service plaintiffs perform intellectual and varied work in the

---

to these plaintiffs as "criminal investigators."

form of investigative work.[25] The court finds that all Customs Service criminal investigator plaintiffs satisfy § 551.205(b)(1).

### 3. Section 551.205(c): Independent Judgment and Discretion

The GS–9 level criminal investigator PD indicates that the amount of supervision exercised over the investigator varies based upon the complexity of the case. Additionally, a supervisor reviews the investigators's work "for technical accuracy and adequacy and for compliance with guidelines and instructions." The GS–9 level investigator therefore receives supervision in excess of the "general" supervision required by § 551.205(c), and such plaintiffs fail to satisfy this element. Furthermore, the scope of review over the investigator's work exceeds that permissible under FPM Letter No. 551–7. *See id.* at 11.

Although the PD for GS–11 level criminal investigators states that the investigators exercise judgment in carrying out their duties, and states the scope of review of the coordinator's completed work, it is unclear as to what degree of supervision an investigator receives in performing his or her daily assignments. The court is unable to determine on the facts before it whether or not GS–11 level investigators receive only "general" supervision as contemplated by § 551.205(c), or supervision in excess of that. Therefore, the court cannot rule on such plaintiff's exemption status upon motions for summary judgement.

Similarly, the GS–12 level criminal investigator PD does not delineate the extent of supervision exercised over these employees. The PD does explain that an investigator's completed work receives only cursory review over unusual cases, and even then only to determine if changes in "operational procedures" or Customs Service "program emphases" are necessary, and states that coordinators use judgement in performing their duties. This suggests to the court that plaintiffs receive only "gen-

eral" supervision in the exercise of their daily assignments. However, the court cannot determine whether GS–12 level investigators do, in fact, satisfy § 551.205(c), and therefore cannot rule on their exemption status at this time.

The PD of GS–13 level criminal investigators does not explicitly state that these plaintiffs receive only "general" supervision in their daily duties, yet it is clear from the applicable language that plaintiffs exercise independent judgment and discretion in abundance. The investigator receives an assignment "in terms of broadly defined mission objectives," and then plans and carries out the investigation independently, without any review at all. Moreover, his or her recommendations for "implementing investigative strategy are normally accepted by superior officials." The court finds therefore that GS–13 level investigators fulfill both § 551.205(c) and OPM guidelines. *See id.*

### 4. Conclusions re: Customs Service marine coordinator plaintiffs

The court finds that Customs Service GS–9 level criminal investigator plaintiffs are non-exempt from the § 207(k) FLSA overtime provisions by way of § 213(a)(1) because they fail to meet the criteria of 5 C.F.R. § 551.205 for the reasons detailed above. The court further finds that Customs Service GS–13 level criminal investigator plaintiffs are properly exempt from § 207(k) by way of § 213(a)(1) because they satisfy all criteria of 5 C.F.R. § 551.205.

The court cannot rule on the exemption status of GS–11 or GS–12 level criminal investigator plaintiffs at this time, for the reasons set out above.

### CONCLUSION

The court holds that the following plaintiffs are not exempt from the FLSA overtime provisions: BATF GS–9 and GS–11 level criminal investigators; DEA GS–9 and GS–11 level investigators; IRS GS–9 and GS–11 investigators; Secret Service

---

25. *See* discussion of definition of intellectual work and application of § 551.205(b) to BATF criminal investigators above. The Customs Service PDs state that in the course of an investiga-

tion, agents must apply their knowledge and exercise their analytical skills. These activities, among others, are intellectual endeavors.

GS–9 and GS–11 level investigators; Customs Service GS–9 level criminal investigators. Thus, the court grants plaintiffs' cross-motion for partial summary judgment as to these plaintiffs.

The court further holds that the following plaintiffs are properly exempt from FLSA overtime provisions: BATF GS–12 and GS–13 level investigators; DEA GS–12 and GS–13 level criminal investigators; IRS GS–12 and GS–13 level investigators; Secret Service GS–12 level investigators, both in the Offices of Investigations and Protective Services, and GS–13 level investigators in the Offices of Investigations and of Protective Research; Customs Service GS–13 level investigators. Therefore, the court grants defendant's motion for partial summary judgment as to these plaintiffs.

The court cannot dispose of the following plaintiffs' claims upon the motions for summary judgment, for the reasons set out above: Customs Service GS–9, GS–11, and GS–12 level marine coordinators; Customs Service GS–11 and GS–12 level criminal investigators. Both defendant's motion for summary judgment and plaintiffs' cross-motion for summary judgment are denied as to the aforementioned plaintiffs.

The parties are urged to use the findings set forth in this order to stipulate to the facts which the court was unable to find, and to submit such stipulations to the court for adjudication. In the alternative, the court suggests that the parties settle the remaining issues in the cross-motions based on the court's findings and conclusions herein and dismiss the claims. Should the parties choose the former course of action, they are directed to submit their stipulations within four weeks of the date of this order. The court will call a status conference shortly thereafter, unless the parties choose settlement. No costs.

IT IS SO ORDERED.